UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

BRUCE CAMPBELL

        Plaintiff,

     v.                         **REPORT AND RECOMMENDATION**
                                      **08-CV-0812 (NAM) (VEB)**

MICHAEL J. ASTRUE
COMMISSIONER OF SOCIAL SECURITY,

        Defendant,

## I.   Introduction

Plaintiff Bruce Campbell brings this action pursuant to the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g), 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security  ("Commissioner"), denying his application for Supplemental Security Income ("SSI").[1]

## II.   Background

On April 28, 2005, Plaintiff, then 49 years old, filed an application for SSI, claiming disability since April 15, 2005, because of a low back impairment, obesity, hypertension, hyperlipidemia, ventral hernia, gastrointestinal reflux disease ("GERD"), psoriasis, fatty liver, depression and anxiety, diabetes, and an inability to read or write (R. at 85-89, 137).[2] His application was denied initially on August 29, 2005 (R. at 32-36). Plaintiff requested a hearing on February 23, 2006 (R. at 37-39).

On November, 24, 2006, Plaintiff and his attorney appeared before the ALJ (R. at 470-526).The ALJ called a supplemental hearing with a vocational expert ("VE") on

---

[1] This case was referred to the undersigned for Report and Recommendation, by the Honorable Norman A. Mordue, pursuant 28 U.S.C. § 636(b)(1)(B), by an Order dated October 2, 2009.
[2] Citations to the underlying administrative record are designated as "R."

March 23, 2007 (R. at 527-556). The ALJ considered the case *de novo* and, on May 10,

2007, issued a decision finding Plaintiff was not disabled (R. at 17-30). The ALJ's

decision became the Commissioner's final decision in this case when the Appeals

Council denied Plaintiff's request for review on May 30, 2008 (R. at 3-6). On July 25,

2008, Plaintiff filed this action disputing the Commissioner's disability determination.

Pursuant to General Order No. 18, issued by the Chief District Judge of the

Northern District of New York on September 12, 2003, this Court will proceed as if both

parties had accompanied their briefs with a motion for judgment on the pleadings.[3]

### III.  Discussion

### A.  Legal Standard and Scope of Review

A court reviewing a denial of disability benefits may not determine *de novo*

whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383 (c)(3); Wagner v.

Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the

Commissioner's determination will only be reversed if the correct legal standards were

not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817

F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the

ALJ applied correct legal principles, application of the substantial evidence standard to

uphold a finding of no disability creates an unacceptable risk that a claimant will be

deprived of the right to have her disability determination made according to the correct

legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v.

Califano, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that

---

[3] Although no motion for judgment on the pleadings was filed, the moving party was excused from such filing under General Order No. 18, which states in part: "The Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings . . . ." General Order No. 18. (N.D.N.Y. Sept. 12, 2003).

amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

The Commissioner has established a five-step sequential evaluation process[4] to

---

[4] The five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's

3

determine whether an individual is disabled as defined under the Social Security Act.

See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the

validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287,

2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing

whether a claimant is disabled.

While the claimant has the burden of proof as to the first four steps, the

Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S.

at 146 n.5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir. 1984). The final step of this inquiry

is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job

qualifications by considering his physical ability, age, education, and work experience.

Second, the Commissioner must determine whether jobs exist in the national economy

that a person having the claimant's qualifications could perform. See 42 U.S.C. §

423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.

Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

Based on the entire record, for the reasons stated below, the Court recommends

remand.

### B.  Analysis

### 1.     The Commissioner's Decision

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful

activity at any relevant time (R. at 22). At step two, the ALJ found that Plaintiff's

---

severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. §§ 416.920, 404.1520.

diabetes, borderline intellectual functioning and obesity were severe impairments, but that his depression and anxiety were non-severe impairments (R. at 22). The ALJ found that Plaintiff's impairments neither individually nor in combination met a listed impairment at step three (R. at 22). The ALJ considered Plaintiff's subjective statements but found him "not credible" (R. at 23-24). In evaluating Plaintiff's impairments, the ALJ also considered several opinions in the record. The ALJ granted "little or no weight" to the opinion that Plaintiff had a moderate to marked limitation for prolonged standing or prolonged sitting from consultative examining physician, Jonathan Wahl, M.D. (R. at 25). The ALJ considered the remainder of Dr. Wahl's opinions but did not state what weight he afforded them (R. at 25). The ALJ also considered an opinion completed by a disability analyst—although the ALJ mistakenly identified the opinion as coming from a physician—but did not weigh the opinion (R. at 27). Finally, the ALJ gave significant weight to the opinions of consultative psychologist, Kerry Brand, Ph.D. (R. at 26-27). The ALJ did not mention or weigh the opinions of the State agency's reviewing psychologist, Lisa Newman, Ph.D. (R. at 20-30, 200-217).The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform light work, to lift twenty pounds occasionally and ten pounds frequently, to stand, walk and sit six hours in a workday, with the following non-exertional limitations: (1) work must be simple entry-level work with no complex decision-making; (2) work must be low-stress with no planning, no scheduling,  no report writing, no supervising, and no high-production quotas; (3) little or no change in the work environment or setting; (4) occasional but not frequent interaction with co-workers and work may be in proximity of co-workers but only occasionally in coordination or conjunction with co-workers; (5) little or no

interaction with the public; (6) access to restrooms two times an hour for three to five minutes at a time; (7) ability to change positions as needed using a sit/stand option every twenty to thirty minutes; (8) "nothing that requires reading instructions, manuals, or diagrams"; and (9) no climbing stairs, ladders, and scaffolds (R. at 22-23).

At step four, relying on the testimony of VE Salvatore Garozzo, the ALJ found that Plaintiff was unable to perform his past relevant work (R. at 27). At step five, the ALJ found that Plaintiff was closely approaching advanced age, "has a seventh grade education and is able to communicate in English," and has no transferable skills (R. at 28). The ALJ noted that had Plaintiff been able to perform the full range of light work, Medical-Vocational rules 202.10[5] and 202.11[6] would have directed a finding of not disabled (R. at 28). However, because of Plaintiff's additional non-exertional limitations, the ALJ relied on the VE's testimony that a person with the above vocational factors, work history, and RFC could perform the job of housekeeper (R. at 28-29). Therefore, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act (R. at 29).

## 2.    Plaintiff's Claims

Plaintiff argues that (a) the ALJ applied the wrong Medical-Vocational Rule because he failed to find Plaintiff was illiterate; (b) the RFC was unsupported for several reasons; (c) the ALJ improperly found Plaintiff's mental impairments non-severe; (d) the

---

[5] Medical-Vocational Rule 202.10 directs a finding of "not disabled" for a claimant who is closely approaching advanced age, with limited education or less, though "at least literate," and unskilled or no past work. 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 202.10.
[6] Medical-Vocational Rule 202.11 directs a finding of "not disabled" for a claimant who is closely approaching advanced age, with limited education or less, and skilled or semi-skilled past work with no transferable skills. 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 202.11.

ALJ improperly assessed Plaintiff's credibility; and (e) the ALJ failed to consider Plaintiff's obesity. Plaintiff's Brief, pp. 11-24.

### a. The ALJ's Finding that Plaintiff had a Seventh Grade Education is Unsupported by the Record

Plaintiff argues that the ALJ improperly failed to apply Medical-Vocational Rule 202.09, which directs a finding of disability for illiterate claimants. Plaintiff's Brief, p. 17. Plaintiff argues that despite ample evidence that Plaintiff is illiterate the ALJ found Plaintiff had a "seventh grade education." Plaintiff's Brief, pp. 18-19. Plaintiff further argues that these errors led to the ALJ calling a VE in error. Plaintiff's Brief, pp. 21-24. Defendant argues that the record supports the ALJ's findings because it shows that Plaintiff could recognize certain words, read a ruler, was able to drive for most of his life, helped his children with math problems, and indicated he could write more than his name in English. Defendant's Brief, p. 19. Defendant further argues that the ALJ properly used Medical-Vocational Rules 202.10 and 202.11 as a framework, and properly called a VE. Defendant's Brief, p. 20-23.

Education is one of the vocational factors an ALJ will consider at step five to determine whether a claimant can adjust to other work. 20 C.F.R. §§ 404.1560(c)(1), 416.960(c)(1). Education primarily means formal schooling or training. 20 C.F.R. §§ 404.1564(a)-(b), 416.964(a)-(b). An ALJ categorizes a claimant's educational abilities using defined terms in the regulations. Id. §§ 404.1564(b)(1)-(5), 416.964(b)(1)-(5).

Of particular relevance here are the categories of "illiteracy" and "limited education." Illiteracy is "the inability to read or write." Id. §§ 404.1564(b)(1), 416.964(b)(1). A person is considered illiterate "if the person cannot read or write a

simple message such as instructions or inventory lists even though the person can sign his or her name." Id. Limited education "means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. . . . generally . . . a 7th grade through the 11th grade level of formal education is a limited education." Id. §§ 404.1564(b)(3), 416.964(b)(3). However, "the numerical grade level that [a claimant] completed in school may not represent [his] actual educational abilities." 20 C.F.R. §§ 404.1564(b), 416.964(b). Therefore, the ALJ will use a claimant's numerical grade level to determine his educational abilities, only "if there is no other evidence to contradict it." Id.

In this case, the ALJ did not use on of the educational categories defined in the regulations, but instead found "[t]he claimant has a seventh grade education and is able to communicate in English" (R. at 28). If the ALJ meant to use the category corresponding to Plaintiff's numerical grade level, then he essentially found that Plaintiff had a "limited education." See 20 C.F.R. §§ 404.1564(b)(3), 416.964(b)(3). However, in this case other evidence of Plaintiff's educational abilities contradicts Plaintiff's numerical grade level. For example, although Plaintiff stated he stayed in school through approximately seventh grade, the record also shows that Plaintiff attended special education and had difficulties learning (R. at 119, 182, 525). Plaintiff repeatedly stated he could not read, write or spell (R. at 37, 146, 482, 501, 506, 522-23, 542). Plaintiff told his doctor, the hospital staff, and the consultative examining psychologist that he could not read or write (R. at 182, 184, 280, 311). The record shows that Plaintiff's wife completed disability forms for him (R. at 112-21, 137-38, 139-47).

8

Furthermore, under questioning by the ALJ, Plaintiff explained how he completed various tasks despite being unable to read or write: he explained that he got the front desk person to complete his reports when he was a hotel maintenance worker (R. at 482, 523); he explained that he helped his children with adding and subtracting homework but their mother helped with reading (R. at 509); he explained that he was able to repair cars as a hobby years prior, despite being unable to read manuals, because he learned by watching and experience (R. at 505-07). Thus, much of the evidence of record indicates that Plaintiff was functionally illiterate.

Nonetheless, the Court recognizes there was some evidence indicating that Plaintiff may have some ability to read.  Plaintiff also stated that his "reading level is at a third grade reading level" (R. at 475). However, this statement is not necessarily dispositive.  In Gross v. McMahon, 473 F.Supp.2d 384, 389 (W.D.N.Y. 2007), the court noted that while the claimant made a similar statement assessing his reading ability, he "did not state what he based that on, whether he had been tested, whether he had been told that by someone else, or whether that was simply his own estimate or guess." Gross v. McMahon, 473 F.Supp.2d 384, 389 (W.D.N.Y. 2007).

In *Gross*, the Court concluded that, in any event, "a third-grade reading level is so low that it calls into question whether plaintiff is functionally illiterate, particularly in light of plaintiff's other testimony that he had been placed in special education classes." Gross, 473 F.Supp.2d at 389 (citing Wolfe v. Chater, 86 F.3d 1072, 1076-77 (11th Cir. 1996); Skinner v. Sec'y of H.H.S., 902 F.2d 447, 450 (6th Cir. 1990); Diehl v. Barnhart, 357 F.Supp.2d 804, 823-24 (E.D.Pa. 2005); Cole v. Apfel, 2000 WL 290432, at *4 (N.D.Ill. Mar. 17, 2000)).

9

In response, the Commissioner points to evidence indicating that Plaintiff could read a ruler, drive most of his life, and help his children with math problems**.** However, the Court notes that these activities do not demonstrate that Plaintiff has the ability to "read or write a simple message such as instructions or inventory lists." 20 C.F.R. §§ 404.1564(b)(1), 416.964(b)(1) (defining illiteracy). Similarly, Plaintiff's admission that he could recognize certain words, (R. at 522) falls short of the ability to read and write simple messages. Id. Having reviewed the record, the Court concludes that the ALJ's finding that Plaintiff had educational abilities at the seventh grade level is unsupported by substantial evidence, especially given the ample evidence suggesting Plaintiff is illiterate.

The possibility that Plaintiff is functionally illiterate is further exacerbated in this case by a failure to adequately develop the record.  Although Dr. Brand tested Plaintiff's IQ and Plaintiff informed her that he was illiterate, she failed to assess his ability to read or write (R. at 182-93). Despite this gap in the record, the ALJ did not order further testing. It is well-established in the Second Circuit that an ALJ has an affirmative duty to develop the record "in light of the essentially non-adversarial nature of a benefits proceeding." Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996) (internal quotations and citations omitted). In this case, the ALJ could have ordered testing of Plaintiff's literacy. See, e.g., Dixie v. Comm'r of Soc. Sec., 2008 WL 2433705, at *6 (N.D.N.Y. June 12, 2008) (remanding for development of the record on the issue of illiteracy despite IQ testing already in the record); see also 20 C.F.R. §§ 404.1512(f); 416.912(f) (noting that if information is not readily available from a claimant's records a consultative examination may be ordered).

Absent formal testing of Plaintiff's ability to read and write, Plaintiff's statements are the only bases for all the evidence on the issue of illiteracy. In this case, the ALJ very explicitly found that Plaintiff was "not a credible witness" (R. at 24, 29). However, an absence of credibility is "not enough of a basis, by itself, for the ALJ to have rejected plaintiff's testimony that he cannot read." Gross, 473 F.Supp.2d at 389. Therefore, the Court recommends remand for development of the record with respect to Plaintiff's abilities to read and write.

Development of the record on illiteracy is especially important in this case because the question is determinative of whether Plaintiff was disabled under the Medical-Vocational rules. See 20 C.F.R. Pt. 404, Subpt. P, App. 2 §§ 202.09-202.11. The ALJ used Rules 202.10 and 202.11 as a framework for decision making, both of which direct a finding of not disabled (R. at 28). However, if the evidence indicated Plaintiff was illiterate, Rule 202.09 would have directed a finding of disabled. 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 202.09. In that event, as Plaintiff correctly argues, calling a VE would have been unnecessary. Social Security Ruling 83-14, 1983 WL 31254, at *3 (S.S.A. 1983) ("Where a person's residual functional capacity (RFC), age, education, and work experience coincide with the criteria of an exertionally based rule in Table No. 1, 2, or 3--and that rule directs a conclusion of "Disabled"--there is no need to consider the additional effects of a nonexertional impairment since consideration of it would add nothing to the fact of disability."); 20 C.F.R. §§ 404.1569a(d); 416.969a(d) (explaining that if a claimant's impairments result in both exertional and non-exertional limitations, the Commissioner "will not directly apply the rules in appendix 2 *unless there is a rule that directs a conclusion that you are disabled based upon your strength limitations . . .*")

(emphasis supplied); 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(e)(2) ("However, where an individual has an impairment or combination of impairments resulting in both strength limitations and nonexertional limitations, *the rules in this subpart are considered in determining first whether a finding of disabled may be possible based on the strength limitations alone . . .*") (emphasis supplied).

### b.  The ALJ Must Reconsider the RFC on Remand

Plaintiff argues that substantial evidence does not support the ALJ's RFC determination in three ways: (1) the opinions of consultative examining physician, Dr. Wahl indicate physical abilities below the range of light work; (2) even treating physician, Dr. Zmora noted that Plaintiff did not sit during office visits and at times seemed uncomfortable; and (3) the ALJ improperly "relied on" a disability analyst's physical RFC assessment indicating Plaintiff could perform light work. Plaintiff's Brief, pp. 19-21. Defendant argues that the portion of Dr. Wahl's opinion that is inconsistent with the RFC was properly rejected and that the ALJ's mistake in identifying the disability analyst as a physician was harmless because the assessment was not assigned weight. Defendant's Brief, p. 14-16, n.4.

The ALJ found that Plaintiff had the RFC "to lift 20 pounds occasionally and 10 pounds frequently" and "to stand, walk, and sit for 6 hours each during an 8 hour work day with regular breaks" (R. at 22-23). The ALJ also found that Plaintiff "should be able to change positions as needed using a sit/stand option every 20-30 minutes" and should not have to climb "stairs, ladders, and scaffolds" (R. at 23).

With respect to Plaintiff's first objection, Dr. Wahl examined Plaintiff on August 1, 2005 and opined:

Based upon the findings of today's evaluation, although claimant appears to have atypical chest pain, given his history of myocardial infarction (which was made by claimant's history only), cardiovascular risk factors such as diabetes and hypertension, and his recent episodes of chest pain, claimant does have a moderate limitation to activities that would involve the frequent or prolonged lifting and carrying of weights, climbing greater than moderate levels of exertion, or frequent or prolonged stair climbing. Claimant should avoid intensely strenuous exercise. Additionally, claimant has a moderate to marked limitation for activities involving prolonged standing or prolonged sitting given the findings on the evaluation, the back pain complaints, and the likelihood of discogenic disease with radiculopathy.

(R. at 179-80).

The ALJ considered these opinions and concluded "[b]ased on the mild findings on examination and diagnostic test, Dr. Wahl's opinion that the claimant has moderate to marked limitation for prolonged standing or prolonged sitting is given little or no weight" (R. at 25). The ALJ gave "little or no weight" only to Dr. Wahl's opinion that Plaintiff had limitations to standing and sitting (R. at 25). The remainder of Dr. Wahl's opinions appear to be consistent with the ALJ's RFC determination. Compare (R. at 22-23) with (R. at 179-80).

With respect to the sitting and standing limitations, the ALJ questioned the bases of Dr. Wahl's opinions—a proper inquiry under the regulations. See 20 C.F.R. 404.1527(d)(3)-(4) (explaining medical opinions are given more weight the "more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings" and "the more consistent an opinion is with the record as a whole").

Specifically, the ALJ stated "there is no evidence in the record that the claimant has radiculopathy" and "no evidence of disc herniation or nerve root compression,"

13

noting that examination showed no sensory deficits and x-rays and an MRI had only mild findings (R. at 25). It appears from these statements that the ALJ did not realize that Dr. Wahl's positive straight leg raising ("SLR") test was evidence of radiculopathy.[7] On August 1, 2005, Dr. Wahl elicited a positive result from a SLR test on Plaintiff's right leg at five degrees, which Dr. Wahl confirmed while Plaintiff was seated (R. at 178). Thus, Dr. Wahl had a clinical basis for finding it likely Plaintiff had radiculopathy. Nonetheless, Dr. Wahl's positive SLR findings are not repeated anywhere else in the record. Plaintiff's treating physician, Dr. Zmora says in her 2005 letters that SLR tests are negative (R. at 160, 240-41, 432). Plaintiff's later treating physician, Dr. Anugwom noted a negative SLR test on February 2, 2007 (R. at 460). The Court recognizes that clinical signs of a low back impairment may be intermittent and may not always produce positive results on a SLR test. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A, § 1.00(D) (acknowledging that abnormal findings, such as positive SLR tests, "may be intermittent," and therefore "their presence over a period of time must be established by a record of ongoing management and evaluation"). However, the record here fails to evince the presence of abnormal SLR tests over a period of time, because neither Dr. Zmora nor Dr. Anugwom  produced a positive SLR test over a period of approximately seven years of treatment (R. at 160-71, 218-64, 390-438). Therefore, the Court cannot

---

[7] Radiculopathy as a "[d]isorder of the spinal nerve roots." Stedman's Medical Dictionary (27th ed. 2000), STEDMANS 347610 (WestLaw). "The straight leg raise test ("SLR") is used to detect nerve root pressure, tension or irritation. A positive SLR requires the reproduction of pain at an elevation of less than 60 degrees. A positive SLR is said to be the most important indication of nerve root pressure." McKinney v. Astrue, 2008 WL 312758, at *4 n.3 (N.D.N.Y. Feb. 1, 2008) (citing Andersson and McNeill, Lumbar Spine Syndromes, 78-79 (Springer-Verlag Wein 1989); see also Attorney's Medical Deskbook (4th ed. 2008), MEDDESK § 18:4 (explaining the significance of a positive SLR test, also known as Lasegue test, as indicating "[c]ompression of the L4–L5 or L5–S1 spinal nerve roots" and explaining that if degree of pain increases as "the examiner continues to elevate the leg higher" the pain is probably physiological not psychological).

say that the ALJ erred in granting little weight to Dr. Wahl's opinion with regard to Plaintiff's ability to sit and stand.

With respect to Plaintiff's second argument, that Dr. Zmora noted Plaintiff did not always sit at office visits and seemed uncomfortable, the Court notes that the ALJ is not required to discuss each piece of evidence he considered. Barringer v. Comm'r, 358 F.Supp.2d 67, 78-79 (N.D.N.Y. 2005) (noting that an ALJ's failure to cite specific evidence does not mean it was not considered) (citing Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000)). As mentioned above, over seven years of treatment, Dr. Zmora and Dr. Anugwom found no greater evidence of Plaintiff's back impairment than occasional tenderness (R. at 160-71, 218-64, 390-438, 459-60), which the ALJ mentioned (R. at 25).

Finally, the Court notes that the ALJ mistakenly identified the disability analyst as a "State agency physician" (R. at 27). The opinions of a disability analyst, who has no medical training, are not entitled to evaluation as medical opinions. See 20 C.F.R. § 404.1527(a)(2) (defining medical opinions as "statements from physicians and psychologists or other acceptable medical sources"); Hopper v. Comm'r of Soc. Sec., 2008 WL 724228, at *10 (N.D.N.Y. Mar. 17, 2008) (finding a disability analyst's opinions are "not a medical source opinion entitled to any weight."). Therefore, courts have found error where an ALJ weighs a disability analyst's opinion as if it were a medical opinion. See, e.g., Bennett v. Astrue, 2009 WL 1035106, at *12 (N.D.N.Y. April 17, 2009) (finding error where the ALJ "assigned 'significant weight' to the opinions of the disability analyst").

Here, the ALJ did not explicitly grant weight to the disability analyst's opinion.

15

However, the disability analyst found that Plaintiff had the RFC to perform light work, which was consistent with the ALJ's finding. (R. at 22, 194-99).  As the only other opinions of Plaintiff's physical abilities were Dr. Wahl's, which the ALJ only partially accepted, it appears to the Court that the ALJ may have adopted the disability analyst's opinion, believing it to be a physician's assessment. Given this possibility, the Court finds that remand is appropriate for further consideration and clarification.  Therefore, on remand, the Court recommends that the ALJ carefully state the basis for his RFC and note that disability analyst's opinions are "not a medical source opinion entitled to any weight." Hopper, 2008 WL 724228, at *10.

### c.  The ALJ Improperly Assessed Plaintiff's Mental Impairments Because He Failed to Consider the Reviewing Psychologist's Opinion

Plaintiff argues that the ALJ erroneously found that Plaintiff's depression and anxiety were non-severe impairments. Plaintiff's Brief, p. 22. Defendant argues the ALJ properly found Plaintiff's depression and anxiety non-severe. Defendant's Brief, pp. 11-13.

As an initial matter, the Court notes that the ALJ did not specifically failed to "incorporate the pertinent findings and conclusions" required for analyzing mental impairments, known as the "special technique." 20 C.F.R. §§ 404.1520a; 416.920a; see also Kohler v. Astrue, 546 F.3d 260, 265-66 (2d Cir. 2008) (citing 20 C.F.R. § 404.1520a). The special technique first requires a determination of whether the Plaintiff has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1). Then, the ALJ must rate the degree of Plaintiff's functional limitation resulting from the impairment in four areas: (1) activities of daily living; (2) social functioning; (3)

16

concentration, persistence, or pace; and (4) episodes of decompensation.[8] 20 C.F.R. §
404.1520a(c)(3). The ALJ must document "a specific finding as to the degree of
limitation in each of the functional areas." 20 C.F.R. § 404.1520a(e)(2).

In this case, the ALJ did not make specific findings for each of the functional
areas of the "special technique," although he did discuss evidence of Plaintiff's daily
activities, socialization, and concentration (R. at 22). In *Kohler*, the Second Circuit
suggested that if an ALJ actually complied with the special technique by making
determinations regarding a Plaintiff's degree of limitation, and simply failed to strictly
comply with the documentation requirement, the error would be harmless. See Kohler,
546 F.3d at 269 n.9. Without more, the Court might have concluded that this is a case in
which the ALJ actually complied with the regulations and any error in strict compliance
was harmless. However, because the ALJ's analysis of Plaintiff's mental impairments
was further flawed based on the ALJ's failure to consider the opinions of State agency
non-examining psychologist, Lisa Newman, Ph.D., it cannot do so. (R. at 200-217).

Although Dr. Newman did not examine Plaintiff, she reviewed his medical
records and his psychological examination with Dr. Brand, and she assessed Plaintiff's
functioning in daily activities, social functioning, concentration, and episodes of
decompensation (R. at 210). Dr. Newman opined Plaintiff had a moderate limitation in
maintaining social functioning, which equates to a severe mental impairment under the
special technique (R. at 210). See 20 C.F.R. §§ 404.1520a(d)(1); 416.920a(d)(1)

---

[8] "Episodes of decompensation are exacerbations or temporary increases in symptoms or signs
accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of
daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." Kohler,
546 F.3d at 266 n.5 (quoting United States Social Security Administration, Disability Evaluation Under
Social Security § 12.00 (June 2006)).

(explaining that a mental impairment is generally found not severe if the degree of limitation in the first three areas is mild or better and there are no episodes of decompensation).

Even though Dr. Newman's opinions directly contradict the ALJ's conclusion that Plaintiff's mental impairments are non-severe, the ALJ did not explain why his findings were contrary, discuss her opinions, or give weight to her opinions. The regulations clearly state that an ALJ "must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist." 20 C.F.R. § 416.927(f)(2)(ii); SSR 96-6p, 1996 WL 374180, at *2. Failure to adhere to this requirement has been a sufficient basis for courts to remand. E.g., Richardson v. Barnhart, 443 F.Supp.2d 411, 425 (W.D.N.Y. 2006) (finding legal error where ALJ failed to explain the weight given to the Commissioner's medical consultants).

Because the ALJ did not address Dr. Newman's opinions that Plaintiff's mental impairments were severe, the Court recommends remand for the ALJ to consider all the relevant evidence of Plaintiff's mental impairments. Kohler, 546 F.3d at 268 (finding fault where "it [wa]s not clear whether the ALJ adequately considered the entire record when determining the severity of [Plaintiff's mental] impairment").[9] Moreover, the Court suggests the ALJ take the opportunity to clearly document application of the special

---

[9] Plaintiff also argued that the ALJ's finding that Plaintiff's mental impairments were non-severe was not supported by Dr. Brand's opinions, even though the ALJ purported to grant the opinions "significant weight." Plaintiff's Brief, p. 22. The Court notes that because of the errors already identified, the ALJ necessarily must reconsider the severity of Plaintiff's mental impairment, including the opinions of Dr. Brand.

technique by making "a specific finding as to the degree of limitation in each of the functional areas." 20 C.F.R. §§ 404.1520a(e)(2); 416.920a(e)(2).

### d.  Assessment of Plaintiff's Credibility

Plaintiff argues that the ALJ's credibility analysis is flawed in several respects, primarily because the ALJ relied upon "mischaracterizations of the evidence." Plaintiff's Brief, pp. 24, 24-27. Defendant argues that the ALJ properly assessed Plaintiff's credibility and that his findings are supported by substantial evidence. Defendant's Brief, pp. 16-18.

Plaintiff's credibility arguments revolve around his contention that the ALJ relied upon "mischaracterizations of the evidence and outright fabrications." Plaintiff's Brief, p. 24. For example, Plaintiff argues the ALJ found that Plaintiff's alleged inability to read did not hamper his ability to work as a general maintenance man; however, Plaintiff's testimony indicates that he lost that particular job because of his inability to read or write. Plaintiff's Brief, p. 25. In his decision the ALJ stated: "Although the claimant testified that he reads at the third grade level, he was able to perform work as a general maintenance man/custodian for a motel for one year. . . . and he testified that he also ran for supplies for a contractor. These jobs did not involve reading; and he apparently did not leave these jobs because of problems due to reading" (R. at 24). However, during his hearings Plaintiff explained that his inability to read or write was the reason he lost his general maintenance position at the hotel (R. at 523) (explaining that being unable to complete reports or inventory, "that's what cost my job at Microtel Inn"); (R. at 542) (explaining that Plaintiff had the front desk woman complete reports and forms for him at the Microtel job, but that he "got caught"). Although Plaintiff correctly points out

19

that the evidence contradicted the ALJ's recitation of the record, substantial evidence may nonetheless support the ALJ's finding that Plaintiff was "not credible" (R. at 23). See Barringer v. Comm'r of Soc. Sec., 358 F.Supp.2d 67, 83 n.26 (N.D.N.Y. 2005) (noting that an ALJ's incorrect rendition of facts in the record is nothing more than harmless error where his credibility assessment is amply supported by other substantial evidence). Plaintiff points out several other examples of the ALJ misstating the record; however, those examples are similarly unavailing where other substantial evidence supports the ALJ's findings. Id.

Because this Court recommends remand, it is not necessary to determine at this point whether the ALJ properly considered Plaintiff's credibility.  On remand, the ALJ should consider the credibility of Plaintiff's statements in light of the record, as further developed, and reach a determination in accordance with the applicable standards.

### e.  The ALJ Considered Plaintiff's Obesity

Plaintiff mentions that "although the ALJ noted" he considered Plaintiff's obesity "there is no evidence that he actually did so." Plaintiff's Brief, p. 23. Defendant argues that the ALJ considered Plaintiff's obesity and even found it to be a severe impairment and considered its effects in determining Plaintiff's RFC. Defendant's Brief, pp. 22-23.

When analyzing obesity, an ALJ should rely on Ruling 02-1p, which explains how an ALJ should consider obesity at steps two through five of the sequential analysis. S.S.R. 02-1p, 2000 WL 628049. At step two, the ALJ should find obesity severe, alone or in combination with other medically determinable impairments, if "it significantly limit's an individual's physical or mental abilities to do basic work activities." Id. at *4. At step

three, the S.S.R. warns that "obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing. This is especially true of musculoskeletal . . . impairments." Id. at *5. For steps four and five, the ALJ "will consider any functional limitations resulting from the obesity in the RFC assessment." Id. at *7. However, the ALJ "will not make assumptions about the severity or functional effects of obesity combined with other impairments. . . . [but] will evaluate each case based on the information in the case record." Id. at *6.

In this case, the ALJ found that Plaintiff's obesity was a severe impairment (R. at 22). In assessing Plaintiff's RFC, the ALJ stated he "also considered the claimant's obesity, which is a medically determinable impairment. The claimant's obesity has been assessed with respect to any functional limitations resulting from it in the residual functional assessment, in addition to any limitations resulting from any other physical or mental impairment in combination with the obesity" (R. at 27). The ALJ further specifically considered evidence that "claimant is morbidly obese" and that in 2005 he "weighed 302 pounds" and in 2006 he weighed "293 pounds" (R. at 24-25). In the RFC, the ALJ concluded that Plaintiff was limited to lifting twenty pounds occasionally and ten frequently; could stand, sit and walk only six hours in an eight hours workday; needed a sit/stand option every twenty to thirty minutes; and could not climb stairs, ladders, and scaffolds (R. at 22-23). Given the ALJ's findings and statements throughout the decision, the Court can only conclude that there is adequate evidence that the ALJ considered Plaintiff's obesity. Therefore, the Court finds no error with respect to the ALJ's analysis of Plaintiff's obesity.

> 3.    Remand

21

"Sentence four of Section 405(g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. S002) (quoting 42 U.S.C. § 405 (g)).  Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a]claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008).  Given the deficiencies in the record as outlined above, it is recommended that the case be remanded for further proceedings consistent with this Report and Recommendation.

## IV.    Conclusion

Based on the foregoing reasons, the Court finds that a remand is necessary and warranted.  Accordingly, it is respectfully recommended that the Commissioner's decision denying disability benefits be REMANDED for further proceedings in accordance with this recommendation and pursuant to sentence four of 42 U.S.C. Section 405(g).

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

DATED: April 29, 2010
Syracuse, New York

## Orders

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

22

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**

Thomas v. Arn, 474 U.S. 140 (1985); Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir.1989); Wesolek v. Canadair Ltd., 838 F.2d 55 (2d Cir.1988).

**SO ORDERED**.

DATED: April 29, 2010
Syracuse, New York

Victor E. Bianchini
United States Magistrate Judge